1
2
3
4
5
6
7

Frank S. Hedin (SBN 291289)
Hedin LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131
Telephone:   (305) 357-2107
Facsimile:   (305) 200-8801
E-Mail:       fhedin@hedinllp.com

*Counsel for Plaintiff and Putative Classes*

8
9

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16

| | |
|---|---|
| MARIA KRASNOVA, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | (JURY TRIAL DEMANDED) |
| CLINIQUE LABORATORIES, LLC, | |
| Defendant. | |

17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Maria Krasnova, individually and on behalf of all others similarly situated, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations pertaining specifically to herself or her counsel, which are based on personal knowledge.

**NATURE OF THE CASE**

1.    Plaintiff brings this action against Defendant Clinique Laboratories, LLC to redress and put a stop to the false, deceptive, and unlawful manner in which Defendant has labeled, distributed, advertised, promoted, and marketed its sunscreen product "Clinique Broad Spectrum SPF 50 Mineral Sunscreen Fluid for Face" (the

"Product"). On the Product's labeling, its outer packaging (the box), and in advertising and promotional materials for the Product, Defendant represents that the Product provides a sun protection factor ("SPF") that is far higher than the SPF that the Product actually provides, thereby deceiving consumers into believing that the Product offers better protection against sunburns and other dangerous effects of exposure to ultraviolet radiation (such as skin cancer and premature aging) than it actually provides, and that the Product is thus worth purchasing at a price higher than what is charged for other lower-SPF sunscreens.

2.     Plaintiff and members of the putative Classes (defined below) purchased the Product based on Defendant's representations that the Product provides SPF 50 protection. Unbeknownst to them, however, the Product actually provides only SPF 26 protection—nearly half of the protection Defendant represents—as independent laboratory testing commissioned by Plaintiff's counsel has revealed. At SPF 26, the Product provides far less protection from the sun's harmful rays—and is of significantly lower quality and worth far less money—than a sunscreen that actually provides SPF 50 protection.

3.     Defendant has labeled, packaged, distributed, advertised, promoted, and marketed the Product as providing greater protection against the sun's harmful rays than it actually provides in order to capitalize on consumer demand for high-SPF sunscreens, such as SPF 50 sunscreens. By promising SPF 50 protection, the Product sells at premium prices and, in turn, generates more revenue and profit for Defendant than its lower-SPF sunscreen counterparts.

4.     By falsely representing the SPF protection provided by the Product, Defendant has knowingly misled and continues to knowingly mislead consumers into believing that they are purchasing a sunscreen with better quality, filtration, absorption, and reflection capabilities against ultraviolet radiation than the lower-SPF

product that they actually receive, thereby deceiving them into paying a premium price for a non-premium product.

5.     Defendant's practices of falsely, deceptively, and misleadingly representing that the Product provides SPF protection of 50 (including on the Product's labeling, packaging, and in advertising and promotional materials) induced Plaintiff and numerous other consumers into either purchasing a product they otherwise would not have purchased at all, or paying significantly more for a product than they would have paid had it been labeled, distributed, advertised and promoted with accurate SPF representations.

6.     Accordingly, Plaintiff brings this class action complaint against Defendant to redress and put a stop to its practices of falsely, deceptively, and unlawfully misrepresenting the SPF protection provided by the Product—conduct that has caused and continues to cause significant harm to consumers nationwide, including in California. Plaintiff seeks actual damages, restitution, injunctive relief, and other legal and equitable remedies on behalf of herself and others similarly situated.

## JURISDICTION AND VENUE

7.     The Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because (i) there are 100 or more members of each of the putative Classes, (ii) the aggregate amount in controversy as to each of the putative Classes exceeds $5,000,000, exclusive of interest and costs, and (iii) at least one member of each of the Classes is a citizen of a state different from Defendant.

8.     Personal jurisdiction and venue are proper because Plaintiff resides in California and within this judicial District and because Plaintiff relied upon Defendant's representations and advertisements concerning the SPF protection provided by the Product in California and within this judicial District, purchased the subject Product from her home in California and within this judicial District, and

1   received the purchased Product at her home in California and within this judicial
2   District, such that a substantial portion of the events and transactions underlying the
3   Plaintiff's claims for relief occurred in California and within this judicial District.

4                                    **PARTIES**

5          9.     Plaintiff is, and at all times relevant hereto was, a citizen and resident of
6   Kern County, California.  On or about April 12, 2025, from her home in California,
7   Plaintiff purchased the Product (Clinique Broad Spectrum SPF 50 Mineral Sunscreen
8   Fluid for Face), which contains two active ingredients (Titanium Dioxide 6.3% and
9   Zinc Oxide 4%), for $25.90 plus tax from Macy's website, www.macys.com.

10         10.    Defendant Clinique Laboratories, LLC is a Delaware limited liability
11  company that maintains its corporate headquarters and principal place of business in
12  New York, New York. Defendant produces, packages, manufactures, and labels the
13  Product, and distributes, advertises, promotes, and markets the Product throughout the
14  United States, including in California.  Defendant's products, including the Product at
15  issue in this case, are sold through various online e-commerce platforms and at
16  physical retail locations nationwide, including throughout California.

17                           **FACTUAL ALLEGATIONS**

18  **I.     Consumers Perceive High-SPF Sunscreens as Providing Greater
19          Protection from the Sun and Justifying Higher Purchase Prices than
            Their Lower-SPF Sunscreen Counterparts**

20         11.    Sunscreens, topically applied products that protect against sunburns and
21  other effects of exposure to ultraviolet radiation (such as skin cancer and premature
22  aging), are sold by numerous companies in varying SPF values, which these
23  companies prominently represent on the products' labels, box packaging, and in
24  advertisements and other promotional materials for the products.

25         12.    SPF is a standardized rating system that measures the fraction of sunburn-
26  producing ultraviolet rays capable of reaching the skin.  The SPF value of a sunscreen

27                                       - 4 -
28

product informs consumers of the level of sunburn protection provided by the sunscreen by indicating the approximate measure of time that a person who has applied the sunscreen can stay in the sun without getting burned.  As an example, a product represented as providing SPF 50 protection should permit a person to stay in the sun 50 times longer without burning than if that person were wearing no protection at all.  Thus, a product with a higher SPF is better able to prevent sunburn by more effectively filtering, absorbing, reflecting, and/or scattering more ultraviolet radiation than products of a lower SPF.

13.    Academics,[1] legislators,[2] and medical organizations[3] alike have emphasized the importance of sunscreen in protecting against the damaging effects of ultraviolet radiation and the importance of appropriately disclosing the SPF capabilities of sunscreen products.

14.    Consumers are familiar with SPF because SPF values have appeared on sunscreens for decades.  Reasonable consumers have learned to correctly understand that higher-SPF sunscreens provide greater protection against the sun's harmful rays than lower-SPF sunscreens.  Accordingly, reasonable consumers expect that if they

---

[1]    *See* Charles P. Tribby et al., *Perceived Usefulness and Recall of Sunscreen Label Information by Consumers*, 157 JAMA DERMATOLOGY 573 (2021).

[2]    *See* Press Release, *Senator Chuck Schumer: New Report Shows Nearly Half of All Sunscreens Make False Claims About SPF Protection* (July 20, 2016), https://www.schumer.senate.gov/newsroom/press-releases/schumer-new-report-shows-nearly-half-of-all-sunscreens-make-false-claims-about-spf-protection-senator-pushes-fda-to-test-sunscreens-confirm-true-spf-numbers-and-crackdown-on-labels-that-promise-protection-but-instead-leave-consumers-burned.

[3]    S. Kim et al., *Prevalence and Correlates of Sun Protections with Sunburn and Vitamin D Deficiency in Sun-Sensitive Individuals*, 34 J. EUR. ACAD. DERMATOL. VENEREOL. 2664 (2020); AM. ACAD. DERMATOLOGY ASS'N, *How to Select Sunscreen*, https://www.aad.org/public/everyday-care/sun-protection/shade-clothing-sunscreen/how-to-select-sunscreen (last visited Oct. 6, 2025).

1  purchase and use a sunscreen labeled SPF 50, for instance, that they will be far better

2  protected against sunburn and cancer-causing ultraviolet rays than if they had

3  purchased and used a sunscreen labeled as, for instance, SPF 30.

4      15.    Consumers thus rely on representations of the SPF values of sunscreens

5  as they compare, assess, and make decisions on which sunscreen products to purchase.

6  **II.  Defendant's Product**

7      16.    The Product in question here, "Clinique Broad Spectrum SPF 50 Mineral

8  Sunscreen Fluid for Face," is produced, manufactured, packaged, labeled, distributed,

9  advertised, promoted, and marketed by Defendant.

10      17.    Defendant has entered licensing agreements for the Product to be sold at

11  numerous e-commerce platforms and physical retail stores across the United States,

12  including but not limited to on the websites of and at retail stores operated by CVS,

13  Sephora, Macy's, Shein, Nordstrom, and Amazon, among many others.

14      18.    Regardless of where the Product is sold, the Product comes in the same

15  box and bottle featuring the same uniform labeling, which expressly states (in large

16  letters on the front of the bottle) that the Product provides "SPF 50" protection, as

17  shown below:



1
2

**III.    Defendant Falsely, Deceptively, and Misleadingly Represents that the Product Provides SPF 50 Protection**

3
4

19.    Defendant's claim that the Product provides SPF 50 protection is false, deceptive, and misleading.

5
6

20.    This is because the SPF protection provided by the Product is not even close to 50.  In reality, the SPF protection provided by the Product is 26.

7
8
9

21.    On or about February 21, 2025, Plaintiff's counsel purchased the Product, bearing Lot B94 and containing two active ingredients (Titanium Dioxide 6.3% and Zinc Oxide 4.0%), for $37.00 plus tax at a Macy's retail store in Miami, Florida.

10
11
12
13
14
15
16
17
18

22.    Plaintiff's counsel then submitted the purchased Product to a reputable and qualified laboratory for testing.  The lab tested the Product by performing a clinical evaluation of static sunscreen efficacy with the sun protection factor (SPF) assay and calculation of the label SPF, following the FDA testing methods embodied in FDA Final Rule, Labeling and Effectiveness Testing; Sunscreen Drug Products for Over-the-Counter Human Use,  76 Fed. Reg. 35620 (June 17, 2011), and FDA, Final Administrative   Order (OTCOOOOO6); Over-the-Counter Monograph MO20: Sunscreen Drug Products for Over-the-Counter Human Use (Sept. 24, 2021). Testing began on May 30, 2025 and concluded on July 3, 2025.

19
20
21
22

23.    The results of the testing commissioned by Plaintiff's counsel reveal that the Product does not provide SPF 50 protection, but rather provides SPF 26 protection. The lab's test results were derived from the testing methods embodied in the FDA Final Rule and FDA Final Administrative Order referenced above.

23
24
25
26

24.    SPF protection of 26, the actual SPF protection provided by the Product as revealed by the testing commissioned by Plaintiff's counsel, offers significantly less protection than SPF 50, which Defendant has falsely represented the Product to consumers as providing. SPF 26 protection affords users a significantly shorter period

27
28

of exposure to ultraviolet radiation without damage when compared to the period of exposure to ultraviolet radiation without damage that SPF 50 protection affords.

25. The Product that Plaintiff purchased, like the Product purchased by each member of the Classes during the time period relevant to this action, came in the same box and bottle with the same labeling as the Product sent for testing by Plaintiff's counsel, contained the same percentage of the active ingredients as the Product sent for testing by Plaintiff's counsel, and was produced and manufactured in the same manner pursuant to the same procedures as the Product sent for testing by Plaintiff's counsel. Moreover, during the time period relevant to this action, there were no reported recalls, production or manufacturing issues, or other events with respect to the Product to suggest that any bottles of the Product sold to consumers might contain sunscreen that was produced or manufactured in a different manner or pursuant to different procedures, or with different percentages of the active ingredients, than any other bottles of the Product. Accordingly, all bottles of the Product that were purchased by consumers during the time period relevant to this action contain sunscreen that was produced and manufactured in the same manner pursuant to the same procedures, that is comprised of the same or materially the same percentages of the active ingredients, and that provides the same or materially the same SPF protection (all significantly less than SPF 50).

26. Defendant, as the producer, manufacturer, distributor, packager, and labeler of the Product, and the employer of a dedicated team of product testing professionals, has been aware or should have been aware, since the Product's inception and throughout the time period relevant to this action, that the true SPF protection provided by the Product is significantly lower than 50.

27.    Moreover, based on the Product's chemical formula and its active ingredients alone, Defendant either knew or should have known that the true SPF protection provided by the Product is significantly and materially lower than SPF 50.

28.    Additionally, Defendant was required to perform and did perform testing on the Product, including concerning the protection against ultraviolet radiation provided by the Product, prior to the Product being labeled, advertised, promoted, marketed, distributed, and offered for sale to consumers.[4] Such testing either made or should have made Defendant aware that the true SPF protection provided by the Product is significantly and materially lower than SPF 50.

29.    Plaintiff is just one among numerous consumers nationwide who have been deceived by Defendant's false and misleading representations of the Product, as the following examples of publicly available "reviews"[5] of the Product reflect:



---

[4]    *See, e.g.,* Clinique, *Our Philosophy*, available at https://www.clinique.com/our-philosophy (last visited Oct. 20, 2025) (explaining that Clinique's products are "Dermatologist guided"); Clinique, *Skin Experts—Why Winter SPF is Non-Negotiable*, hhttps://www.clinique.com/skin-school-blog/skin-experts/sunscreen-in-winter (explaining that its products are dermatologist- and ophthalmologist-tested or tested in clinical settings).

[5]    The reviews are accessible at the following webpages: https://www.amazon.com/Clinique-Broad-Spectrum-Mineral-Sunscreen/dp/B01F5BBNOU#averageCustomerReviewsAnchor (first review depicted); https://www.ulta.com/p/broad-spectrum-spf-50-mineral-sunscreen-fluid-face-xlsImpprod14171057 (second review depicted); https://www.nordstrom.com/s/clinique-broad-spectrum-spf-50-mineral-sunscreen-fluid-for-face/4371536? (third review depicted).

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

★☆☆☆☆  **Won't use again**

I put this on my sons face, ears and neck. It wasn't even a particularly sunny day and not only did he get burned,he also got a terrible rash wherever I had put this sunscreen. I bought two bottles and I'm throwing them both out. I checked out the ingredient list further and this has some stuff in it that can cause skin irritation.

PleaseFix                          ★☆☆☆☆ Aug 11, 2023

⊘ **Verified purchase**       **Did they forget to add the sunscreen ingredient?**

I decided to try a new sunscreen and assumed Clinique would be good for sensitive skin. I seldom burn, even in direct sun all day. But 1 afternoon in partial sun with this product produced sunburn!

👍 **1 found this helpful**

10    30.    At all times relevant hereto, Defendant either knew or should have known

11  that its representations that the Product provides SPF protection of 50 were untrue,

12  false and/or misleading, and made these representations knowing that consumers

13  would rely upon the Product's represented SPF value of 50 in deciding to purchase the

14  Product and in using the Product while exposed to the sun's harmful ultraviolet

15  radiation.

16    31.    Defendant's misrepresentations of the SPF protection provided by the

17  Product, on the labeling and packaging of the Product and in advertising and

18  promotional materials for the Product, were made for the purpose of inducing—and

19  did in fact induce—consumers (including Plaintiff and members of the Classes) to

20  purchase the Product at a premium price, based on their reasonable but mistaken

21  beliefs that the Product provides greater protection against the sun's harmful rays than

22  its lower-SPF sunscreen counterparts.

23  **IV.    Plaintiff's Experience**

24    32.    Plaintiff purchased the Product at the website www.macys.com on or

25  about April 12, 2025 from her home in California.

26

27

28

33.    SPF was the most important consideration in Plaintiff's decision to purchase the Product because she values the filtration, absorption, and reflection capabilities against UV rays provided by high SPF sunscreens, such as those of SPF 50 protection.

34.    Prior to purchasing the Product, Plaintiff saw—and in making her decision to purchase, she relied on—Defendant's representations on the label and packaging of the Product that the Product provided "SPF 50" protection. Plaintiff had no realistic way to review or independently assess Defendant's proprietary knowledge concerning the Product's chemical formula or the Product's true SPF performance prior to purchasing the Product. At the time she purchased the Product, Plaintiff had no reason to suspect or know that the Product provided significantly less SPF protection than the value of 50 that Defendant had represented on the Product's label and packaging and had advertised, promoted, and marketed the Product as providing.

35.    Based on Defendant's representations on the Product's labeling and packaging, Plaintiff reasonably expected the Product she purchased would provide SPF 50 protection in terms of its filtration, absorption, and reflection of ultraviolet radiation.

36.    However, the Product actually provided Plaintiff materially less SPF protection than SPF 50 protection.

37.    Had Plaintiff been aware that the actual SPF protection provided by the Product was materially less than SPF 50, she would not have paid as much as she did for the Product or would not have purchased the Product at all.

38.    As the direct and proximate result of Defendant's false, deceptive, and misleading statements and omissions concerning the Product, as alleged herein, Plaintiff suffered economic injury by paying a premium for an inferior quality good

1    and by being deprived of the full intended use of the Product and the full benefit of the

2    bargain promised by Defendant.

3    **CLASS ALLEGATIONS**

4         39.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to

5    represent the following "Nationwide Class":

6         All persons who, during the applicable limitation period continuing

7         through the date of an order certifying this class, purchased "Clinique
          Broad Spectrum SPF 50 Mineral Sunscreen Fluid for Face" in the United

8         States.

9         40.    Plaintiff also seeks to represent the following "California Subclass"

10    pursuant to Federal Rule of Civil Procedure 23:

11        All persons who, during the applicable limitation period continuing

12        through the date of an order certifying this class, purchased "Clinique
          Broad Spectrum SPF 50 Mineral Sunscreen Fluid for Face" in California.

13        41.    The "Nationwide Class" and the "California Subclass" are at times

14    referred to herein collectively as the "Classes".

15        42.    Plaintiff reserves the right to modify the definitions of the Classes

16    following the commencement of discovery and further investigation.

17        43.    Excluded from the Classes are Defendant, any parent, subsidiary, or

18    affiliate of Defendant, as well as the officers, directors, agents, servants, or employees

19    of the foregoing.

20        44.    This action may properly be brought and maintained as a class action

21    pursuant to Federal Rule of Civil Procedure 23(a) and (b).  This class action satisfies

22    the numerosity, typicality, adequacy, commonality, predominance, and superiority

23    requirements.

24        45.    The Classes are so numerous that their individual joinder herein is

25    impracticable.  The number of persons within the Classes is substantial.  Plaintiff is

26    informed and believes, and thereupon alleges, that there are millions of persons who

27

28

comprise the Nationwide Class and at least several hundred thousand persons who comprise the California Subclass.  The precise number of members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Members of the Classes may be notified of the pendency of this action by mail and/or publication through the purchase records of Defendant and relevant third parties.

46.    Common questions of law and fact exist for all members of the Classes and predominate over questions affecting only individual members. Common legal and factual questions include, but are not limited to:

(a)    whether Defendant's representations that the Product provided SPF protection of 50 were false, deceptive, and/or misleading;

(b)    whether Defendant knew or should have known that its misrepresentations, as alleged herein, were false or misleading to consumers;

(c)    whether reasonable consumers would rely on Defendant's misrepresentations concerning the Product's SPF, as alleged herein,  to believe the Product provided the advertised level of protection from the sun's harmful radiation;

(d)    whether Defendant received and retained profits attributable to sales of the Product in New York;

(e)    whether Defendant's conduct, as alleged herein, violated the statutes and laws at issue; and

(f)    The damages to which Plaintiff and the members of the Classes are entitled to redress Defendant's unlawful conduct, as alleged herein.

47.    The named Plaintiff's claims are typical of the claims of unnamed members of the Classes in that the named Plaintiff and all members of the Classes

suffered similar injuries as a result of the same uniform conduct and practices by Defendant, as alleged herein.

48.    Plaintiff is an adequate representative of the Classes she seeks to represent because her interests are aligned, and do not conflict, with the interests of the unnamed members of the Classes, she has retained competent counsel experienced in prosecuting consumer class actions, and she intends to prosecute this action vigorously.  Plaintiff and her counsel will fairly and adequately protect the interests of the Classes.

49.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable.  The individual interest of each member of the Classes in controlling the prosecution of separate claims is small because the damages at stake for these claims on an individual basis are small.  Even if every member of the Classes could afford to pursue individual litigation, the Court system could not.  It would be unduly burdensome to the courts in which such individualized litigation would proceed.  Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the Classes.  Plaintiff anticipates no difficulty in the management of this action as a class action.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Unjust Enrichment
(By Plaintiff, Individually and on Behalf of the
Nationwide Class, Against Defendant)

50.    Plaintiff repeats and incorporates paragraphs 1–49 above as though fully set forth herein.

51.    Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendant under New York common law.

52.    Plaintiff and the Nationwide Class Members have conferred substantial benefits on Defendant by purchasing the Product, including the monetary profits that Defendant received attributable to sales of the Product to Plaintiff and members of the Nationwide Class.

53.    Defendant received and retained, at its corporate headquarters in New York, the monetary revenue and profits that it received attributable to sales of the Product to Plaintiff and members of the Nationwide Class. Defendant appreciates or has knowledge of such benefits.

54.    Defendant has knowingly and willingly accepted and enjoyed these benefits in New York.

55.    Defendant either knew or should have known that the payments rendered by Plaintiff and the Nationwide Class members were given and received with the expectation that the Product would be as represented and warranted.  For Defendant to receive and retain, in New York, the benefit of Plaintiff's and Nationwide Class members' payments under these circumstances is inequitable.

56.    As a result of Defendant's misrepresentations that the Product provides SPF protection of 50—made on the labeling and packaging of the Product and in advertising and promotional materials for the Product, from Defendant's headquarters

in New York—Defendant wrongfully received and retained, in New York, monetary revenue and profits attributable to sales of the Product.

57.    As described above, had Plaintiff been aware of the actual SPF protection provided by the Product, she would not have paid as much as she did for the Product or would not have purchased the Product at all.

58.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the other Nationwide Class members have suffered actual damages, in the form of the monetary revenue and profit received and retained by Defendant in New York attributable to the money that Plaintiff and members of the Classes paid to purchase a product labeled as "SPF 50" but which actually provided only SPF 26 protection.

59.    Equity demands disgorgement of Defendant's ill-begotten gains. Defendant will be unjustly enriched unless it is ordered to disgorge those profits for the benefit of Plaintiff and Nationwide Class members.

60.    Plaintiff and the Nationwide Class members are entitled to restitution from Defendant and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant through this inequitable conduct.

## SECOND CLAIM FOR RELIEF
### Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200
(By Plaintiff, Individually and on Behalf of the
California Subclass, Against Defendant)

61.    Plaintiff repeats and incorporates paragraphs 1–49 above as though fully set forth herein.

62.    Plaintiff brings this claim individually and on behalf of the California Subclass members against Defendant.

63.    The Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq*. (the "UCL"), prohibits any "unlawful," "unfair," or "fraudulent" business act or practice and any false or misleading advertising.

64.    Defendant's acts and practices, as alleged herein, were unlawful, unfair, and fraudulent under the UCL.

65.    Defendant's conduct, as alleged herein, constituted an "unfair" business act or practice because, as alleged above, Defendant produced, manufactured, labeled, packaged, distributed, marketed, promoted, and advertised the Product (which was purchased by consumers throughout California) as providing an SPF protection of 50, which it knew or should have known is materially higher than the SPF protection that it actually provides.  In so doing, Defendant intentionally, deceptively, and falsely labeled and advertised the Product and omitted material facts regarding the Product, and engaged in immoral, unethical, oppressive, and/or unscrupulous activities that were substantially injurious to consumers, offending an established public policy in California.  Defendant's conduct, as alleged herein, was also "unfair" because whatever utility Defendant derived from mislabeling the SPF protection provided by its Product was outweighed by the resulting consumer deception and overcharges.

66.    Defendant's representations that the Product provides SPF protection of 50 also constituted "fraudulent" business practices in violation of the UCL because such misrepresentations were intentional and were likely to deceive—and in fact did deceive—reasonable consumers and the public into believing the Product has greater filtration, absorption, and reflection capabilities against ultraviolet radiation than other alternative products providing lower SPF protection than the Product was represented to provide, causing them to justifiably rely on such misrepresentations in deciding to purchase the Product.

67.     Additionally, Defendant's conduct, as alleged herein, was "unlawful" under the UCL because it violates California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and California's express warranty law, Cal. Com. Code § 2313.

68.     Plaintiff saw and relied on Defendant's representations on the labeling and packaging of the Product, which stated that the Product provided SPF protection of 50. These representations were intentionally false, deceptive, and misleading, as described herein.

69.     Reasonable and available alternatives existed to further Defendant's legitimate business interests other than the conduct described herein.

70.     As a result of Defendant's false or misleading SPF representations, Plaintiff and the California Subclass members have been harmed. As described herein, had Plaintiff been aware of the actual SPF protection provided by the Product, she would not have paid as much as she did for the Product or would not have purchased the Product at all.

71.     As a result of its deception, Defendant has been able to reap unjust revenue and profit in violation of the UCL.

72.     Unless restrained and enjoined, Defendant will continue to misrepresent the Product as providing SPF protection of 50. Accordingly, injunctive relief is appropriate for Plaintiff and the California Subclass members.

73.     As a result of the above-described conduct, Plaintiff and the California Subclass members seek restitution and disgorgement of all money obtained by Defendant from Plaintiff and the California Subclass members as a result of its unlawful, unfair, and/or fraudulent conduct, and as well as injunctive relief and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

CLASS ACTION COMPLAINT

1
2
3

**THIRD CLAIM FOR RELIEF**
**False Advertising in Violation of Cal. Bus. & Prof. Code § 17500**
(By Plaintiff, Individually and on Behalf of the
California Subclass, Against Defendant)

4      74.    Plaintiff repeats and incorporates paragraphs 1–49 above as though fully
5  set forth herein.

6      75.    Plaintiff brings this claim individually and on behalf of the California
7  Subclass members against Defendant.

8      76.    California's False Advertising Law (the "FAL")—Cal. Bus. & Prof.
9  Code §§ 17500, *et seq.*—prohibits "any statement" that is "untrue or misleading" and
10 made "with the intent directly or indirectly to dispose of" property or services.

11     77.    As noted above, Defendant falsely or misleadingly represented that the
12 Product provides SPF protection of 50, when in fact the SPF protection it provides is
13 materially less than 50.

14     78.    Defendant made this misrepresentation for the purposes of inducing
15 purchases of the Product by consumers and maximizing the number of purchases of
16 the Product by consumers.

17     79.    Reasonable consumers, like Plaintiff, were likely to be (and actually
18 were) misled by this misrepresentation. As noted above, there is no reasonable means
19 for an individual consumer to verify a product's SPF prior to purchase, because
20 verifying a product's SPF requires highly technical and expensive testing. Moreover,
21 reliance on a manufacturer's SPF representations is standard practice for consumers.

22     80.    Plaintiff and California Subclass members suffered economic injury as a
23 result of Defendant's misrepresentations that the Product provides SPF protection of
24 50. But for Defendant's false SPF claims, Plaintiff and California Subclass members
25 would not have paid as much as they did for the Product or would not have purchased
26 the Product at all. Accordingly, Plaintiff and California Subclass members were

27
28

- 19 -
CLASS ACTION COMPLAINT

misled into paying a price for the Product that they would not have paid had Defendant truthfully and accurately represented the SPF protection provided by the Product.

81.    As a result of Defendant's misrepresentations of the SPF protection provided by the Product, Plaintiff and California Subclass members have been injured in terms of the full amount of money they paid for the Product or, at the very least, the amount of money paid for the Product as represented in excess of what a consumer reasonably would have paid for the Product as delivered.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty in Violation of Cal. Com. Code § 2313**
(By Plaintiff, Individually and on Behalf of the
California Subclass, Against Defendant)

82.    Plaintiff repeats and incorporates paragraphs 1–49 above as though fully set forth herein.

83.    Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant under California Commercial Code § 2313.

84.    Defendant produced, manufactured, labeled, packaged, distributed, advertised and promoted, and marketed the Product in its regular course of business.

85.    Plaintiff and the California Subclass members purchased the Product in California.

86.    Defendant represented that the Product provides SPF protection of 50 to the public, including Plaintiff and California Subclass members, on the labeling of the Product and in advertising and promotional materials for the Product.

87.    Defendant intended its SPF 50 representations—which figure prominently on the Product's labeling and packaging, and in advertising and promotional materials for the Product—to be relied upon by consumers in California like Plaintiff and the California Subclass members in purchasing the Product and ultimately using the Product on themselves and their loved ones.

88.    Plaintiff reasonably relied on these representations, which formed the basis of her bargain, in purchasing the Product.

89.    Defendant breached the express warranty of the Product it provided to consumers in California because the Product does not provide SPF protection of 50, but rather provides SPF protection far lower than 50.

90.    The SPF protection represented on the labels and packaging of the Product was false when the Product was sold to Plaintiff and California Subclass members, and the falsity of these representations was undiscoverable by Plaintiff and the California Subclass members at the time they made their purchases.

91.    All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiff and the members of the California Subclass in terms of paying for the goods at issue.

92.    Defendant also had actual or constructive notice of the falsity of the SPF representations on the labeling of the Product based upon the testing Defendant performed on the Product and Defendant's knowledge of the active ingredient and the formula of the Product.

93.    Defendant's breach of express warranty has caused Plaintiff and the California Subclass members to suffer injuries, pay for a falsely labeled Product, and enter into transactions that they either would not have entered into at all or would not have entered into for the consideration paid.  As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the California Subclass members have suffered damages and continue to suffer damages, including economic damages, in terms of the full price of the full amount of money they paid for the Product or, at the very least, the amount of money paid for the Product as represented in excess of what a consumer reasonably would have paid for the Product as delivered.

94.    As a result of Defendant's breach of an express warranty, Plaintiff and the members of the California Subclass are entitled to legal and equitable relief, including damages, costs, attorneys' fees, rescission, and other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty of Merchantability**
**in Violation of Cal. Com. Code § 2314**
(By Plaintiff, Individually and on Behalf of the
California Subclass, Against Defendant)

95.    Plaintiff repeats and incorporates paragraphs 1–49 above as though fully set forth herein.

96.    Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant under California Commercial Code § 2314 and the Song–Beverly Act (Cal. Civ. Code §§ 1790, *et seq*.).

97.    Defendant is a "merchant" with respect to the goods at issue here—the Product, a sunscreen lotion.

98.    By placing the Product into the stream of commerce, Defendant made—and breached—at least two implied warranties.

99.    First, to be merchantable, a product must conform to any written representations on its labels and packaging. Because the true SPF protection provided by the Product does not, in fact, comport with the advertised SPF protection provided by the Product, as alleged herein, Defendant has breached an implied warranty of merchantability.

100.    Second, to be merchantable, the Product must be fit for its intended purpose as a consumer sunscreen lotion. Because consumer sunscreens containing materially less SPF protection than represented are generally considered dangerous

and unsuitable, consumer sunscreen represented as providing SPF 50 protection is not fit for its intended purposes if such sunscreen actually provides far less than SPF 50 protection (such as SPF 26 protection in the case of the Product).  Defendant breached an implied warranty of merchantability by producing, manufacturing, labeling, packaging distributing, advertising, marketing, and promoting a product that it represented as providing SPF 50 protection but, in reality, provides only SPF 26 protection.

101.    Defendant's breaches of these implied warranties have caused Plaintiff and the California Subclass members to suffer injuries, pay for a falsely labeled Product, and enter into transactions that they either would not have entered into at all or would not have entered into for the consideration paid.

102.    As a direct and proximate result of Defendant's breach, Plaintiff and members of the California Subclass have suffered damages and continue to suffer damages, including economic damages, in terms of the full amount of money they paid for the Product or, at the very least, the amount of money paid for the Product as represented in excess of what a consumer reasonably would have paid for the Product as delivered.

## SIXTH CLAIM FOR RELIEF
### Fraud in Violation of California Common Law
(By Plaintiff, Individually and on Behalf of the
California Subclass, Against Defendant)

103.    Plaintiff repeats and incorporates paragraphs 1–49 above as though fully set forth herein.

104.    Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant under California common law.

105.   As alleged above, Defendant made false and misleading statements, and omitted material facts, in representing to Plaintiff and the California Subclass that the SPF protection provided by the Product is 50.

106.   The actual SPF protection provided by the Product that Plaintiff and the California Subclass members purchased was far less than the SPF protection that Defendant represented on the labeling of the Product, packaging for the Product, and in materials used to advertise, promote, and market the Product.

107.   Defendant also failed to disclose that the Product did not, in fact, provide SPF protection of 50.

108.   Defendant knowingly and intentionally misrepresented the SPF protection provided by the Product for the purpose of increasing its revenues and maximizing its corporate profits.

109.   Defendant made these misrepresentations and omissions with knowledge of their falsehood.

110.   Defendant's misrepresentations and omissions concerning the SPF protection provided by the Product were intended to induce Plaintiff and the California Subclass members to purchase the Product.

111.   And as Defendant intended, its misrepresentations and omissions concerning the SPF protection of the Product induced Plaintiff and the California Subclass members to purchase the Product.  In purchasing the Product, Plaintiff and the California Subclass members reasonably and justifiably relied on Defendant's misrepresentations and omissions concerning the SPF protection provided by the Product.

112.   Had Plaintiff and the California Subclass members known that the Product provided SPF protection materially lower than the SPF protection represented by Defendant on the Product's labeling, and in advertising and promotional materials

CLASS ACTION COMPLAINT

for the Product, they either would not have purchased the Product at all or would have paid significantly less for the Product than they did.

113.    The fraudulent actions by Defendant, as alleged herein, caused substantial harm to Plaintiff and the California Subclass members, entitling them to monetary damages and other available legal and equitable remedies.

**SEVENTH CLAIM FOR RELIEF**
**Negligent Misrepresentation in Violation of California Common Law**
(By Plaintiff, Individually and on Behalf of the
California Subclass, Against Defendant)

114.    Plaintiff repeats and incorporates paragraphs 1–49 above as though fully set forth herein.

115.    Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant under California common law.

116.    Defendant misrepresented a fact.  It advertised that the Product provided SPF protection of 50, when in fact the SPF protection provided by the Product is materially less than 50.

117.    There were no reasonable grounds for Defendant to believe that these misrepresentations were true.    As an experienced sunscreen producer and manufacturer responsible for testing the sunscreens that it labels, packages, distributes, advertises, promotes, and markets, Defendant should have known that the Product did not in fact provide an SPF protection of anywhere close to 50.

118.    This misrepresentation was material.  Consumers purchase sunscreens to protect themselves and their loved ones from the dangerous effects of sun exposure. Accordingly, the degree of sun protection as advertised on the Product was a material—if not the sole—factor in Plaintiff's decision to purchase the Product.  And this would be true of any reasonable consumer, including members of the California Subclass.

119. Defendant intended that consumers, like Plaintiff and the California Subclass members, rely on its representations that the Product provides SPF protection of 50, as stated on the labels of the Product and in advertising and promotional materials for the Product. As alleged herein, that representation was designed solely for consumers, like Plaintiff and the California Subclass members, who will ultimately purchase and use the Product on themselves and their loved ones.

120. Plaintiff's reliance on Defendant's representation that the Product provided SPF protection of 50 was justifiable. Plaintiff had no way of verifying this representation before purchase, and consumers generally rely on the SPF stated on the Product instead of paying the substantial costs to have the Product tested by labs.

121. Plaintiff and the California Subclass members were proximately damaged by Defendant's misrepresentations. Had Plaintiff and the California Subclass members known that Defendant's representations that the Product provided SPF protection of 50 were false, Plaintiff and the California Subclass members would not have paid as much as they did for the Product, or they would not have purchased the Product at all.

122. Further, Defendant was in a "special relationship" with Plaintiff and the California Subclass members, and thus owed them a duty of care, because:

a) The SPF misrepresentations Defendant made on the Product's labels and in advertising and promotional materials for the Product were intended solely to affect the purchasing decisions of consumers, like Plaintiff and the California Subclass members, who will ultimately base their decision on these SPF claims and who ultimately use the Product on themselves or their loved ones;

b) It was foreseeable that, by misrepresenting an SPF value as being higher than it is, and charging a premium for that added protection, Defendant would economically harm consumers by misleading them into paying an unjustified premium for a sunscreen that lacked the advertised protection;

c) This harm was certain;

CLASS ACTION COMPLAINT

d) Defendant's decision to label and advertise, market, and promote the Product as providing SPF 50 protection was the close, proximate cause of Plaintiff's and the California Subclass members' deception and the fact that they were overcharged for the Product;

e) Misrepresenting the SPF of a sunscreen is egregious and immoral for several reasons, the most obvious being that it leaves consumers vulnerable to sunburn and heightens their risk of skin cancer by misleading them into trusting inadequate sun protection from a lower quality sunscreen. Charging a steep premium for a sunscreen that does not actually protect people from the sun also immorally deprives these consumers of money that they could have spent on more useful, necessary items; and

f) Holding sunscreen producers and manufacturers accountable—to Plaintiff and California Subclass members, and other sunscreen consumers—for SPF misrepresentations would deter future misrepresentations, with no perceivable drawbacks.

123.    Accordingly, Plaintiff seeks damages on behalf of herself and California Subclass members in the full amount of the Product or, at the very least, the amount of money paid for the Product as represented in excess of what a consumer reasonably would have paid for the Product as delivered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant as follows:

A.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

B.    For an order finding in favor of Plaintiff and the Classes and against Defendant on all counts asserted herein;

C.    For actual, compensatory, and/or punitive damages in amounts to be determined by the Court and/or jury;

- 27 -
CLASS ACTION COMPLAINT

D.    For prejudgment interest on all amounts awarded;

E.    For an order of restitution and all other forms of equitable monetary relief;

F.    For injunctive relief as pleaded or as the Court may deem proper; and

G.    For an order awarding punitive damages, reasonable attorneys' fees, and costs to counsel for Plaintiff and the Classes.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all causes of action and issues so triable.


Dated: December 29, 2025          Respectfully submitted,

*/s/ Frank S. Hedin*
Frank S. Hedin (SBN 291289)
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone:  (305) 357-2107
Facsimile:   (305) 200-8801
E-Mail:      fhedin@hedinllp.com

*Counsel for Plaintiff and Putative Classes*

CLASS ACTION COMPLAINT